RECEIVED IL
6/30/2021
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Andy Hope Williams Jr., *Sui Juris*  )
*In Propria Persona*  )
        Petitioner  )
        v.  )
          )
THE CITY OF AURORA, KIRSTEN ZIMAN;  )
SERGEANT JEFF TATE;  )
          )
        Defendants.  )

**1:21-cv-03489**
**Judge Ronald A. Guzman**
**Magistrate Judge Gabriel A. Fuentes**

## COMPLAINT

1.    Andy Hope Williams Jr., as a Private Attorney General brings this complaint against the City of Aurora ("City") for declaratory and injunctive relief declaring the Gang Database by Aurora Police Department (the "APD" or "Aurora Police" or "Department") on behalf of individuals who have been or in the future will be listed as a gang member in the Gang Database by the City and the APD is unconstitutional.

## INTRODUCTION

2.    The City of through the Aurora Police Department uses, maintains, publishes, and shares a Gang Database of all suspected alleged gang members in the City that is arbitrary, discriminatory, over-inclusive, and error-ridden. The APD disproportionately targets Black and Latinx and poor people of color for inclusion in the Gang Database.

3.    APD officers are afforded unlimited discretion to include someone in the Gang Database. They wield this discretion in a discriminatory manner, often falsely labeling people gang members based solely on their race and neighborhood.

4.    Individuals who are labeled gang members by APD officers are not provided any due process protections, including notice or an opportunity to contest the gang designation. Once an individual is included in the Gang Database, he or she is in the database forever as there are

1

no known mechanisms by which he or she can request to be removed, nor does the APD conduct any internal audits to guarantee that the information in the Database is accurate.

5. The APD knowingly relies on its own wrongful gang designations to harass, falsely arrest, and falsely imprison the individuals labeled as gang members. Furthermore, the APD shares its Gang Database with numerous third party agencies, causing significant known and unknown harm to Black and Latinx and poor people, including deprivations of employment, licensures, bond relief, and more. The APD's policies and practices relating to the use and maintenance of its Gang Database therefore violate the constitutional rights of Black and Latinx people

6. Despite these harsh realities, little is known about the APD's operation of its gang database. For example, Petitioner does not know how many people are in Aurora's gang database, what proportion of those people are Black and Latinx, whether the APD has ever assessed the gang database's accuracy or effectiveness at fighting crime, or whether procedures exist for removing false allegations from the database.

7. Petitioner thus sent the City of Aurora a public records request on January 1, 2020, nearly 18 months ago. The City delayed their response to that request, failed to conduct an adequate search, and erroneously relied on exemptions to the Illinois Freedom of Information Act ("FOIA") under Sections 7(d)(i),(v), and (vi), as well as Section 7(1)(b-5) to deny the request. To this day, even though the Illinois Attorney General's Office intervened under 5 ILCS 140/9.5(a), the City has failed to comply. Petitioner therefore seeks declaratory and injunctive relief requiring the City to comply with FOIA by producing all requested documents without further delay.

8.      This is an action seeking injunctive relief on behalf of all persons who currently are or in the future will be included in APD's Gang Database. This lawsuit is brought against the City of Aurora, Jeff Tate and Chief Kirsten Ziman in their official capacity for violations of the First, Fourth, Eighth, Thirteenth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985 (3) and Illinois state law, including the Illinois Civil Rights Act of 2003, 740 ILCS 23/5. Petitioner seeks declaratory and injunctive relief on behalf of the entire city so as to put an end to the APD's unconstitutional policies and practices relating to its Gang Database and so that the protected class of people can enjoy their freedom.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a). This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over claims arising under Illinois state law, including the Illinois Civil Rights Act.

10.      Declaratory and injunctive relief is sought as authorized by Title VI, 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

11.      Venue is proper under 28 U.S.C. § 1391(b) because the City is located in the Northern District of Illinois and the principal events, actions, or omissions giving rise to these claims which occurred in the Northern District of Illinois.

## PARTIES

12.      Andy Hope Williams Jr., has standing to bring this complaint as a "private attorney general" which authorizes a private citizen standing to sue for vindication of a public objective. *Associated Industries v. Ickes*, 134 F.2d 694 (2d Cir. 1943)

3

13.     A private attorney general is meant to convey the concept that a private citizen may stand in the shoes of the Attorney General advancing the public interest in a lawsuit on behalf of a significant class of persons.

14.     Defendant CITY OF AURORA (the "City") is and at all times mentioned herein was a municipality organized and operating under the statutes of the State of Illinois. It is authorized under the statutes of the State of Illinois to maintain the Aurora Police Department, which acts as the City's agent in the areas of municipal law enforcement, and for which the City is ultimately responsible. Defendant City was, at all times material to this Complaint, the employer and principal of the Aurora Police Department. ("APD")

15.     Defendant Sergeant Tate is the Sergeant over the Special Operations Group[1] ("SOG"), at all times material to this Complaint, was employed by Defendant City of Aurora in its Division of Police. Sergeant Tate is being sued in his individual and official capacity; used or tolerated the use by other officers of an excessive amount of force; received inadequate training; failed to properly supervise, and/or discipline by or on behalf of Defendant City of Aurora in the use of force during demonstrations and retaliating for speech they opposed and/or resented; and was a "person" under 42 U.S.C. §§ 1983 and 1985 (3) who acted under color of law.

16.     Defendant KIRSTEN ZIMAN is the Chief of the Aurora Police Department. At all times relevant to the events at issue in this case, Defendant Ziman was employed by the Aurora Police Department. As such, she was acting under color of law. At all times relevant to the events at issue in this case, Defendant Ziman promulgated rules, regulations, polices, and procedures at the Aurora Police Department. Defendant Ziman is responsible for supervising all APD officers and managing all operations at the APD. She is sued here in her official capacity.

---

[1] SOG investigators patrol neighborhoods known for gun, drug and gang-related crimes and conduct proactive criminal investigations to reduce violent crimes in the city.

17.     The interest in the health and well-being of Aurora residents both physical and economic is implicated in this complaint as it seeks the prevention of present and future harm to Aurora residents including individuals who are, have been, or would be victims of the City's unconstitutional law enforcement practices.

18.     It is the declared interest of the State of Illinois that all people in Illinois can maintain personal dignity, realize their full productive capacities, and further their interests, rights and privileges as residents of Illinois. 775 ILCS 5/1-102(E). The City's actions substantially affect or threaten the State of Illinois's public policy and its stated interest in the non-discriminatory treatment of its residents.

## FACTUAL ALLEGATIONS

### I.     History of the APD's Gang Database and APD's Current Policies and Practices Governing the Gang Database

19.     The current rendition of what is commonly known as the APD's Gang Database is housed within the APD's electronic system.

20.     Information in the Gang Database traces back to at least the 1980s, when the APD started using a gang database using pictures and handwritten cards. In the late 1990's, APD began entering information from the paper gang database into an electronic database, thus today's Gang Database includes people initially identified as gang members over 30 years ago.

21.     APD officers typically document encounters with alleged gang members which then are used in the future to discriminate by designated an arrested person as a gang member and used to initiate discriminatory investigatory stops. This makes it easy for Officers to discriminate individuals that they have labeled as gang members.

22.     The U.S. Supreme Court has said that an individual must not be punished because of his or her "status" under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Robinson v. California,* 370 U.S. 660, 666 (1962).

23.     In American society, gang membership is a status-one into which many are socialized.

24.     The U.S. Supreme Court has made it clear that being an alleged gang member is not a crime and discriminating against alleged members is unconstitutional. *Lanzetta v. New Jersey* 306 U.S. 451 (1939) Ruling that being in a gang is not a crime.

25.     Despite knowledge that the Gang Database is unconstitutional by labeling people as gang members, the APD has failed to implement any policy or practice to abolish the practice of labeling individuals as gang members.

26.     The APD's policies and practices for including individuals in the Gang Database grant police officers wide discretion with little oversight, leading to false designations.

27.     Any APD officer, including but not limited to patrol officers and members of the Special Operations Group, may designate an individual as a gang member.

28.     According to APD policies and practices, an officer can designate an individual as a gang member if the officer can "substantiate" gang membership through specific criteria which violates due process.

29.     Criteria an officer may use to substantiate gang membership include but are not limited to: (1) wearing distinctive emblems, tattoos, or similar markings indicative of a specific street gang; (2) the use of signals or symbols, distinctive of a specific street gang; (3) information provided from a alleged "reliable" third party or another APD officer; (4) or identification of

gang membership through any database. In addition, APD has a practice of using social media, such as posts to Facebook, Twitter, Instagram, and YouTube, to substantiate gang membership.

30.     The criteria that APD officers use to determine gang affiliation is almost entirely unrelated to actual criminal conduct or active participation in gang activities.

31.     In practice, APD officers include individuals in the Gang Database without any justification or evidence proving that they are in fact members of street gangs which is irrelevant either way and an invasion of privacy.

32.     Pursuant to policies and practices, the APD does not provide notice to individuals of their inclusion in the Gang Database. The APD also does not allow individuals to challenge their inclusion in the Gang Database or appeal their gang designation. If a person somehow discovers they have been wrongfully included in the database, there is no mechanism by which they can request to be removed from the Database.

**II.     T he APD Maintains a Racially Discriminatory Gang Database in Which It Falsely and Permanently Labels Individuals as Gang Members and unlawfully discriminates because of the disparate impact it imposes on Black and Latinx people**

33.     The APD identifies a substantially higher percentage of Black and Latinx people as gang members. The most recent statistics from the National Gang Center reflect that 81.5 percent of gang members are Black or Latinx. National Youth Gang Survey Analysis, National Gang Center (last visited May 30, 2018), https://www.nationalgangcenter.gov/Survey-Analysis/Demographics.

34.     Correspondingly, the APD identifies a substantially lower percentage of white people as gang members. According to the most recent statistics from the National Gang Center, 11.5 percent of gang members nationally are white. In contrast, less than 5 percent of identified gang members in the APD Gang Database are white.

35.     Upon information and belief, the APD over-counts Black and Latinx people as gang members by targeting minority neighborhoods and block-labeling only Black and Latinx people encountered in those neighborhoods.

**B**.     **The APD's targeting of Black and Latinx people for inclusion in the Gang Database is motivated by racial and ethnic animus**

36.     When the city established the Special Operations Group ("SOG"), there was animus towards people of color, particularly Black and Latinx people.

37.     African-Americans have constantly asserted that some APD officers are racist, have no respect for the lives and experiences of people of color and approach every encounter with people of color as if the person, regardless of age, gender or circumstance, is a criminal.

38.     There is substantial evidence that people of color-particularly African-Americans who have had disproportionately negative experiences with the police over an extended period of time as was discussed in the community talks over the last year. There is also substantial evidence that these experiences continue today and the City is not doing enough to combat the racial bias.

39.     Historically, the APD's gang suppression efforts have been marred by racial animus. In the 1990s, the City of Aurora began a zero tolerance attitude that was "predominately enforced against people of color."

40.     Complaints establish that APD's use of force disproportionately affects people of color. The same is true for foot and traffic stops. These enforcement actions have deepened a widespread perception that police are indiscriminately targeting anyone and everyone in communities of color.

**C.** **The APD's Gang Database is error-ridden**

41.     Upon information and belief, the Gang Database identifies at least thousands of people as gang members who were never, or are no longer, alleged gang members.

42.     Upon information and belief, as discussed above, APD officers frequently falsely identify individuals as "self-admitted" gang members, particularly Black and Latinx individuals.

43.     The APD knows that its Gang Database contains many errors, but it relies on the information for its own policing purposes, continues to share the information with third-parties, and has taken no action to verify the accuracy of the Gang Database.

**D.** **Labels in the Gang Database are permanent and impose harm**

44.     The APD has a policy and practice of never deleting gang labels from the Gang Database.

45.     Even as individuals age, they are not removed or considered for removal from the Gang Database.

46.     Despite the consequences of being permanently labeled a gang member, the APD has not enacted any policies or practices to protect children from being placed in the Gang Database for life. The number of juveniles currently in the Gang Database is unknown.

47.     In addition to the constitutional violations suffered by the Black and Latinx as further described below, the Defendants' Gang Database related actions and inactions subject Black and Latinx to significant harm, including public humiliation and the risk of being targeted by law enforcement for enhanced surveillance and discriminatory stops.

**IV.** **The APD Relies on Its Own False Designations Resulting in Violations of the Black and Latinx Constitutional Rights**

48.     The APD's gang database was designed to be far-reaching, with the idea early on that it would include "other law enforcement agencies, prosecutors, the court system, the

corrections system and other interventions, perhaps including non-criminal justice partnerships."

49.     Upon information and belief, the APD shares the identities of people in the Gang Database with other third parties, voluntarily and/or upon request, including but not limited to licensing review boards such as the Illinois Concealed Carry Licensing Review Board and government agencies that are not data-sharing partners.

50.     Many Black and Latinx have suffered violations of their constitutional rights due to their wrongful inclusion in the Gang Database and have suffered the below described harms without ever learning that they are in the Gang Database, that this designation is being shared, or that it is causing them harm.

51.     The following is a list of known harms stemming from inclusion in the APD Gang Database:

a.      Employment: As a result of the APD's sharing of its Gang Database with third parties, individuals who are wrongfully included in the gang database have been denied their right to work in their chosen field.

b.      Licensures: As a result of the APD's sharing of its Gang Database with third parties, individuals have been made ineligible for various types of licenses, including the Illinois Concealed Carry License.

c.      Education: Wrongful inclusion in the Gang Database can deprive young class members of their right to public education without due process.

d.      Police harassment: Upon information and belief, when police officers scan license plates and/or run names, they see information regarding the person to whom the vehicle is registered, including any gang designation. This results in the ongoing harassment by law enforcement of persons wrongfully included in the Gang Database.

e.    Unreasonable search and seizure: Wrongful gang designation can result in individuals being subjected to unreasonable searches and seizures.

f.    False arrest/false imprisonment: Wrongful gang designation can also result in false arrest and false imprisonment.

g.    Bail/Bond: Wrongful inclusion in the Gang Database can negatively impact bond decisions, including by being denied bond, increasing the bail amount, and by causing someone to be placed under house arrest rather than be released on their own recognizance. APD directives specify that district commanders must ensure that I-Bonds are not issued for verified gang members that are charged with jailable offenses.

h.    Parole: Upon information and belief, wrongful inclusion in the Gang Database can negatively impact a parolee in a parole revocation hearing.

i.    Parental Rights: Upon information and belief, wrongful inclusion in the Gang Database can negatively impact Department of Child and Family Services cases, implicating an individual's parental rights.

j.    Housing: Upon information and belief, wrongful inclusion in the Gang Database can negatively impact an individual's access to public housing.

52.    Black, Latinx and poor people have and will continue to suffer these harms for so long as the Defendants continue to operate the Gang Database in the manner described in this Complaint.

53.    Black, Latinx and poor people will continue to suffer the above listed and other yet unknown consequences until APD ends its unconstitutional policies and practices related to the Gang Database.

54.     Black, Latinx and poor people are even more likely to suffer many of these harms than white class members, including police harassment and escalated police encounters, unreasonable searches and seizures, false arrest and imprisonment, and bail/bond and parole consequences. This is because Black, Latinx and poor people are more likely to be stopped by police after their initial placement in the Gang Database, and to become re-involved in the criminal justice system.

55.     Thus, the harm of being erroneously included in the Gang Database is and will continue to be disproportionately felt by Black, Latinx and poor people.

**V.     Violations of Black, Latinx and Poor People's Rights by the Defendants**

56.     The rights of the Black, Latinx and Poor People's are continually violated by the Defendants as part of the APD's pattern and practice of discriminatory policing and unconstitutional use and maintenance of the Gang Database, as outlined above. The City of Aurora's policies and practices were the moving force behind the alleged misconduct by the APD and SOG.

**Petitioners' Public Records Request**

57.     On January 1, 2020, Petitioners sent a written public records request under Illinois Freedom of Information Act, 5 ILCS 140/1 to the City of Aurora for documents relating to the Gang Assessment Database and any other databases in which gang allegation information is kept.

58.     On January 5, 2020, the City responded asking Petitioner to narrow the request.

59.     On January 15, 2020, per a telephone conversation with a City employee, Petitioner verbally narrowed the request.

60.     On January 23, 2020, the request was denied allegedly because t was exempt from production based upon the following statutory FOIA exemption(s): under Sections 7(d)(i),(v), and (vi), as well as Section 7(1)(b-5).

61.     On March 23, 2020, Petitioner contacted the Public Access Counselor pursuant to Section 9. 5( g) of FOIA ( 5 ILLS 140/ 9. 5( g) ( West 2018))

62.     On March 31, 2020, pursuant to Section 9. 5(c) of FOIA ( 5 ILLS 140/ 9. 5(c) (West 2018)), the Office of the Attorney General informed the City to provide for confidential review a copy of the unredacted Departments gang database within seven days.

63.     On April 9, 2020, the City responded citing they did not have to release the information.

64.     On May 20, 2020, the Public Access Counselor closed its file per the Petitioner's request.

## COUNT I – 42 U.S.C. § 1983
## Violation of the 1st Amendment – Freedom of Association

65.     E ach paragraph of this Complaint is incorporated as if restated fully herein.

66.     The Bill of Rights affords certain "highly personal relationships a substantial measure of sanctuary from unjustified interference by the State."

67.     The right to associate and engage in activities protected by the first amendment is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."

68.     The gang database violates the right to associate because it criminalizes individuals who hang together based on social, religious, and cultural ends.

69.     It is not illegal to be a member of a gang.

70.     It is a protected right that people have been endowed with by their Creator to associate with anyone whom they choose without being targeted or discriminated against because they have been labeled as a gang member and put in a database.

71.     Absent injunctive and declaratory relief, the named people in the gang database will continue to suffer irreparable harm in that the Defendants will constantly harass and stop them without probable cause leading to fear, mistrust, and bogus charges.

### COUNT II – 42 U.S.C. § 1983
### Violation of the 1st Amendment – Freedom of Speech

72.     E ach paragraph of this Complaint is incorporated as if restated fully herein.

73.     The Supreme Court has stated that the First Amendment carries the understanding that "government has no power to restrict expression because of its message, its ideas, its subject matter or its content.

74.     The First Amendment to the U.S. Constitution, applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. Amend. I.

75.     The right to wear colors, symbols, or certain clothing is a protected right of speech in that it expresses the way one feels based o social and cultural ends.

76.     The gang database violates the right to express oneself because it allows the Defendants to interfere with the named individuals in the gang database right to expression.

77.     It is a protected right that people have been endowed with by their Creator and Constitution to express themselves in whatever way they desire as long as they do not injure another party.

14

78. Absent injunctive and declaratory relief, the people in the gang database will continue to suffer irreparable harm in that Defendants will constantly harass and stop them without probable cause just because they associate together in a group of two or more people.

## COUNT III – 42 U.S.C. § 1983
## Violation of the Eighth Amendment – Cruel and Unusual Punishment

79. E ach paragraph of this Complaint is incorporated as if restated fully herein.

80. The U.S. Supreme Court has said that an individual must not be punished because of his or her "status" under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Robinson v. California,* 370 U.S. 660, 666 (1962).

81. In American society, gang membership is a status-one into which many are socialized.

82. Therefore, to criminalize someone and put them in a database for his or her alleged membership is a violation of their right to be free from cruel and unusual punishment.

83. Alleged street gang members are typically young men of color born into communities with few options for economic survival, protection or role models. Thus, the criminalization of gang members is essentially the criminalization of poor people of color who have had to survive generations of racism and societal marginalization.

84. The gang database is used to control and keep watch on a class of people which is a form of bondage, akin to slavery which is unconstitutional, cruel, and unusual.

85. Absent injunctive and declaratory relief, the people in the gang database will continue to suffer irreparable harm in that Defendants will constantly harass and stop them without probable cause just because they associate together in a group of two or more people.

## COUNT IV – 42 U.S.C. § 1983
## Violation of the Fourteenth Amendment – Equal Protection

86.     E ach paragraph of this Complaint is incorporated as if restated fully herein.

87.     The City, through its Police Department, has implemented, enforced, encouraged, and sanctioned a policy, practice, and custom of using discriminatory policing tactics to target Black and Latinx for inclusion in the Gang Database based solely on their race and national origin, in violation of the Fourteenth Amendment.

88.     The City intentionally applies a facially neutral policy in a discriminatory manner. As a result, the City's policy, practice, and/or custom of maintaining the Gang Database violates the Equal Protection Clause of the Fourteenth Amendment.

89.     Complaints from the community indicates that the City's Gang Database related policies and practices have a discriminatory effect on Black and Latinx people and that Black and Lantix people are included in the Gang Database at far higher rates than are similarly situated white people.

90.     By its acts and omissions, the City has acted under color of state law to deprive the Black and Latinx people named in the gang database of their Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

91.     The City intends to discriminate against people when it violates peoples' rights through placement in the Gang Database.

92.     Defendants pursued this policy precisely because of the adverse effects it has on Black and Latinx individuals.

93.     This discriminatory purpose is evidenced by the APD's and SOG's repeatedly use of traffic stops and officers routinely calling both Blacks and Latinx gang members.

94.     The City was and remains deliberately indifferent to the harm created by APD officers through the implementation of the Gang Database.

95.     Subordinates of the City have carried out this policy at least in part because of the adverse effects it has had on Black and Latinx individuals, and a reasonable inference can be drawn that supervisors have intended those effects to occur.

96.     Despite notice of racial disparities in the Gang Database, the City's policies and practices concerning the Gang Database remain unchanged.

97.     The City has implemented, enforced, encouraged, and sanctioned APD's policy, practice, and custom of using and maintaining a Gang Database in a manner that constitutes racial and/or ethic discrimination against Black and Latinx people in violation of the Fourteenth Amendment.

98.     As a direct and proximate result of the aforesaid acts and omissions of the City of Aurora, the Fourteenth Amendment rights of Black and Latinx people have been violated.

99.     Unless restrained by order of this Court, a real and immediate threat exists that the Fourteenth Amendment rights of Black and Latinx people will be violated by APD and SOG officers in the future.

100.    Petitioners seek injunctive and declaratory relief against the City, Chief Ziman and Sergeant Tate in their official capacity to prevent the continued violation of their constitutional rights.

**COUNT V – 42 U.S.C. § 1983**
**Violation of the Fourth Amendment – Unlawful Search and Seizure**

101.    E ach paragraph of this Complaint is incorporated as if restated fully herein.

102. The City, through its Police Department, has implemented, enforced, encouraged, and sanctioned a policy, practice, and custom of relying on the Gang Database to target Black and Latinx people for unreasonable searches and seizures in violation of the Fourth Amendment.

103. APD and SOG officers falsely manufacture reasonable suspicion for these searches and seizures based on guilt by association.

104. Specifically, APD and SOG officers engage in unlawful searches and seizures relying solely on the fact that the APD and SOG have identified certain individual as gang members.

105. The City has acted with deliberate indifference to the Fourth Amendment rights of Black and Latinx people in Aurora.

106. As a direct and proximate result of the acts and omissions of the City, APD, and the SOG, the Fourth Amendment rights of the people named in the gang database have been violated.

107. Unless restrained by order of this Court, a real and immediate threat exists that the Fourth Amendment rights of the people named in the gang database will be violated by APD and SOG officers in the future.

108. Petitioner seeks injunctive and declaratory relief against the City, Chief Ziman and Sergeant Tate in their official capacity to prevent the continued violation of their constitutional rights.

**COUNT VI – 42 U.S.C. § 1985(3)**
**Violation of the Thirteenth Amendment – Conspiracy to Violate Civil Rights**

109. E ach paragraph of this Complaint is incorporated as if restated fully herein.

110. Acting under color of law and pursuant to the customs, policies and practices of the City, Chief Ziman and Sergeant Tate, acting in their respective individual and/or official

18

capacities, have engaged in conduct and adopted laws and policies that violate the people's rights named in the gang database under Amend. XIII of the U.S. Constitution.

111.   The Defendants willfully and maliciously conspired, planned, and agreed to violate Black and Latinx civil rights by putting their names in a database in order to violate their constitutional and inalienable rights.

112.   Their purpose was to prevent Black and Latinx people named in the gang database from enjoying the equal protection of the laws and from enjoying the equal rights, privileges and immunities of citizens under the laws of the United States, the State of Illinois, and the City of Aurora including but not limited to their rights to freedom of speech, movement, association and assembly, their right to be secure in their person and home; as well as their right to travel and not be deprived of life and liberty other than by due process of law.

113.   Pursuant to their conspiracy, Defendants willfully, intentionally, and maliciously harass and interfere with the people named in the gang database rights thus preventing them from enjoying and exercising their rights, privileges and immunities as citizens of the United States and the State of Illinois.

114.   Defendants violated § 1985(3) because they conspired and have conspired to deny the named individuals in the gang database on the basis of their race, class and national origin, the equal protection of the laws as detailed above.

115.   As a result of their conspiracy, the individuals has been deprived of deprived of life, liberty, property, have suffered mental, emotional and physical harm.

116.   Petitioner seeks injunctive and declaratory relief against the City, Chief Ziman and Sergeant Tate in their official capacity to prevent the continued violation of their constitutional rights.

**Count VII**
**Civil Rights Act of 1964, 42 U.S.C. § 2000(d) - City of Aurora**

117.     E ach paragraph of this Complaint is incorporated as if restated fully herein.

118.     The law enforcement activities described in this complaint have been funded, in part, with federal funds.

119.     Discrimination based on race in the law enforcement activities and conduct described herein is prohibited under 42 U.S.C. § 2000(d), *et seq.* The acts and conduct complained herein were motivated by racial animus, were intended to discriminate on the basis of race and/or had a disparate impact on people of color, particularly those labeled as Black and Latinx.

120.     As a direct and proximate result of the above mentioned acts, the class of people represented in this complaint, have suffered injuries and damages and have been deprived of the rights under civil rights laws. Without appropriate injunctive relief and damages, these violations will continue to occur.

**Count VIII**
**Violations of Title VI (City of Aurora)**

121.     E ach paragraph of this Complaint is incorporated as if restated fully herein.

122.     Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

123.     The City received and continues to receive federal financial assistance for its programs and activities that are subject to the requirements of Title VI and its implementing regulations.

20

124.    The City has engaged in law enforcement practices, including stops, searches, arrests, based on the individuals being named in the gang database that have an adverse disparate impact on Black and Latinx people which is unnecessary to achieve non-discriminatory objectives.

125.    Securing compliance from the City cannot be achieved without a court order.

126.    The City's discriminatory law enforcement practices violate Title VI.

127.    As a direct and proximate result of the above mentioned acts, the people named in the gang database have suffered injuries and damages and have been deprived of the rights under civil rights laws. Without appropriate injunctive relief these violations will continue to occur.

**Count IX**
**Monell Claim for Declaratory, Injunctive Relief under 42 U.S.C. § 1983 the City of Aurora**

128.    E ach paragraph of this Complaint is incorporated as if restated fully herein.

129.    The actions of the APD and SOG were undertaken pursuant to policies and practices of the City and APD described above and below, which were ratified by City Council, the policymakers for the City of Aurora with final policymaking authority.

130.    At all times material to this complaint, Defendant City of Aurora through its Police Department, Police Sergeant, Chief of Police, and City Council had interrelated de facto policies, practices, and customs which included inter alia:

a.    maintaining policies that labeled people as gang members and entered them into a database;

b.     maintaining policies that encourage and allow officers to use this database to harass, oppress, and unlawfully stop individuals named in the database;

131. The interrelated policies, practices, and customs alleged above were or should have been well-known within the City and APD considering they have a Special Operations Group created specifically to help enforce these polices and go after alleged gang members.[2]

132. Petitioner seeks injunctive and declaratory relief against the City of Aurora to remedy the city's policies and practices described above that have violated and will continue to violate Black and Latinx people named in the gang database.

### Count X
### Violation of the Illinois Civil Rights Act of 2003, ILCS 23/5 (Defendants)

133. Each paragraph of this Complaint is incorporated as if restated fully herein.

134. The Illinois Civil Rights Act ("ICRA") states, in relevant part, that no unit of State, county, or local government shall "utilize criteria or methods of administration that have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender." 740 ILCS 23/5(a)(2).

135. The APD has a policy and practice of including Black and Latinx individuals who have not participated in any gang activity in the Gang Database for no justifiable reason other than their race and national origin.

136. The criteria and methods that the APD applies with respect to its use and maintenance of the Gang Database has resulted in the inclusion of a disproportionate number of Black and Latinx in the Gang Database.

137. The APD's discriminatory law enforcement practices with respect to its Gang Database constitute criteria and methods of administration that create a disparate impact on Black and Latinx people, in violation of the ICRA.

---

[2] See City of Aurora's website last visited on June 29, 2021 at Special Operations Group | Aurora, IL (aurora-il.org).

138.    The people named in the gang database have all suffered harm, including but not limited to humiliation, enhanced surveillance by law enforcement, false arrests, false imprisonment, inability to secure employment and denial of immigration relief as a result of the APD intentionally applying facially neutral policies related to the Gang Database in a discriminatory manner.

139.    Petitioner seeks injunctive and declaratory relief against the City, Chief Ziman and Sergeant Tate in their official capacity to prevent the continued violation of their constitutional rights.

**COUNT XI –**
**Willful Violation of the FOIA Request**

140.    E ach paragraph of this Complaint is incorporated as if restated fully herein.

141.    The City is a public body under FOIA.

142.    The requested records are public records of the Petitioner and a protected class of people.

143.    The City violated FOIA by failing to release the records.

144.    The City has erroneously relied on FOIA exemptions in withholding records to parts of Petitioners' request-seeking, respectively, database entries, policies governing the identification of alleged gang members, and the race and ages of alleged gang members.

145.    Exemptions do not apply because Petitioner requested that names and other personal information be omitted from responsive documents. As a result, the disclosure of the requested records would not constitute an unwarranted invasion of privacy.

146.    The City willfully and intentionally violated FOIA by refusing to release the records.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully prays that:

A.      Enjoin Defendants from withholding non-exempt records under FOIA;

B.      Declare that the City and its agents gang database deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, in violation of Section 1983 and Section 1985(3);

C.      Declare that the City and its agents have a policy, custom, or practice that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the State of Illinois, in violation of the Illinois Constitution, the Illinois Human Rights Act, and they have violated Title VI;

D.      Declare that the City of Aurora's gang database must be abolished;

E.      Enjoin the City and its agents from engaging in any of the predicate acts forming the basis of the policy, custom, practice, or conduct that violations of Title VI described herein;

F.      Order the City and its agents to adopt and implement policies and procedures that identify, correct, and prevent the unlawful conduct described herein that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States;

G.      Order the City and its agents to adopt and implement policies and procedures that identify, correct, and prevent the unlawful conduct described herein that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the State of Illinois;

H.      Declare Defendants have violated FOIA and order them pay civil penalties:

I.      Award damages pursuant to 42 U.S.C. § 1986; pay attorney's costs and expenses

pursuant to 42 U.S.C. 1988; and

K.      Order such other appropriate relief as the interests of justice may require.

Dated: June 30, 2021

Respectfully submitted,


By: /s/ Andy Hope Williams Jr.
Private Attorney General

Andy Hope Williams Jr.
5707 S. Cass Ave. #681
Westmont, IL 60559
630-479-7330
hope5780@yahoo.com