# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Andy Hope Williams Jr., | ) | |
| Plaintiff, | ) | |
| | ) | No. 21 C 3489 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| The City of Aurora, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court refers this case to the Executive Committee and requests that it be reassigned to Judge Tharp as related to *Williams v. City of Aurora, et al.*, No. 20 C 2549.

## STATEMENT

Plaintiff Andy Hope Williams Jr. is a 49-year-old Black man who resides in Willowbrook, Illinois. (Am. Comp., Dkt. # 30, ¶ 12.) He is a native of Aurora, Illinois and regularly returns there to visit family, friends, and members of his ministry. Plaintiff alleges, in part, that the City of Aurora and the Aurora Police Department ("APD") "use[], maintain[], publish[], and share[] a Gang Database of all suspected alleged gang members in the City that is arbitrary, discriminatory, unconstitutional, over-inclusive, and error-ridden," the "APD disproportionately targets Black and Latinx and poor people of color for inclusion in the Gang Database," the APD "wield[s] . . . [its] discretion [to include individuals in the database] in a discriminatory manner, often falsely labeling people gang members based solely on their race and neighborhood, and using it as an unconstitutional pre-textual stop," and the APD "knowingly relies on its own wrongful gang designations to harass, falsely arrest, and falsely imprison the individuals labeled as gang members," among other things. (*Id*. ¶¶ 2, 3, 5.) According to Plaintiff, he was "wrongfully placed in the Gang Database as an alleged member of the Gangster Disciples." (*Id*. ¶ 12.) On behalf of all persons who currently are or in the future will be included in the gang database, Plaintiff asks the Court to declare the use of the database to be unconstitutional, among other things. In addition to the constitutional claims related to the gang database, Plaintiff also alleges that the City willfully and intentionally violated the Illinois Freedom of Information Act ("Illinois FOIA") by failing to provide records that Plaintiff requested regarding database entries and policies.[1]

---

[1] Plaintiff alleges the following counts: violations of the guarantees of freedom of association and freedom of speech under the First Amendment (Counts I and II); violation of the Eighth Amendment's prohibition against cruel and unusual punishment (Count III); violation of the guarantee of equal protection under the Fourteenth Amendment (Count IV); unlawful search and seizure under the Fourth Amendment (Count V); violation of the Thirteenth Amendment—

Defendants moved to dismiss Plaintiff's amended complaint. In the motion to dismiss, Defendants disclosed that Plaintiff's allegations regarding the Aurora gang database were originally included as Count IX in another complaint pending before Judge Tharp, *Williams v. City of Aurora, et al.*, No. 20 C 2549. In Judge Tharp's case, Plaintiff alleges constitutional violations stemming from an August 27, 2019 traffic stop of Plaintiff by Aurora police officers. As is relevant here, Count IX alleged a Fourteenth Amendment due-process violation, stating that the APD maintains a gang database; the defendant officers falsely labeled Plaintiff as a member of an Aurora street gang and included Plaintiff's identifying information in the APD's gang database without justification; had Plaintiff's name not been in the gang database, he would not have been targeted and detained on August 27, 2019; and the inclusion of his name in the gang database "will adversely affect his ability not to be discriminated against." (*Williams v. City of Aurora, et al.*, No. 20 C 2549, Dkt. # 2, ¶¶ 107-111.) When Defendants moved to dismiss that claim, Plaintiff did not respond to the motion to dismiss. Judge Tharp granted the motion and dismissed the claim without prejudice with leave to replead. Instead of filing an amended complaint with a repleaded claim, Plaintiff filed a new complaint based on the alleged unconstitutionality of the gang database. That case was assigned to this Court and is summarized in the first paragraph, as set forth above. On the Civil Cover Sheet that Plaintiff filed with the complaint in the instant case, Plaintiff marked "no" in response to the question asking whether the case was a refiling.[2]

Plaintiff's litigating a claim through an initial motion to dismiss, receiving a ruling on it, and then refiling that claim in front of another judge takes on the appearance of judge shopping, which is "a practice that should not be encouraged." *In re Mann,* 229 F.3d 657, 658 (7th Cir. 2000). The Seventh Circuit recently reaffirmed its aversion to multiplying litigation by seeking rulings on the same matter before different judges. In *Ewing v. Carrier*, 35 F.4th 592 (7th Cir. 2022), the plaintiffs sued a limited liability company for fraud and breach of contract, and the case was assigned to Judge Coleman. After Judge Coleman denied a motion to amend the

conspiracy to violate civil rights (Count VI); violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d), against the City of Aurora (Count VII); *Monell* claim for injunctive relief against the City of Aurora (Count IX); violation of the Illinois Civil Rights Act of 2003, 740 ILCS 23/5 (Count X); violation of inalienable rights under the Illinois Constitution (Count XI); double jeopardy violation under the Illinois Constitution (Count XII); and violation of the Illinois FOIA (Count XIII). The amended complaint does not contain a Count VIII.

[2] In addition to the case pending before Judge Tharp, Plaintiff also filed another case against the City of Aurora, Mayor Richard Ervin, the Aurora City Council, the Association of Professional Police Officers, Lee Catavu, and Sergeant Tate, alleging various constitutional violations by the Aurora Police Department and seeking to redress purported violations of the Civil Rights Act of 1871 and "to remedy a pattern or practice of conduct by law enforcement officers that deprives primarily people of color of their rights, privileges, and immunities." (*Williams v. City of Aurora, et al.*, No. 21 C 3212, Compl., Dkt. # 1, ¶ 3.) The case is pending before Judge Kness. Plaintiff alleges that the City of Aurora "has a long history of racial inequality and prejudice in its criminal justice system generally, and within its police force particularly" and asks for "injunctive relief and damages in the amount of 10% of the APD budget that will enable the City to eliminate unconstitutional conduct that has plagued APD for decades." (*Id.* ¶¶ 7, 9.)

complaint to add two additional defendants (one of the LLC's members and that member's employer), the plaintiff filed a second lawsuit, naming these two defendants and alleging claims similar to those in the suit pending before Judge Coleman. *Id*. at 593. The second case was assigned to Judge Kness, who dismissed the suit as barred by claim preclusion, and the plaintiffs appealed that ruling. *Id*. The Seventh Circuit did not address on appeal the argument that the basis for Judge Kness's dismissal was incorrect on the merits. Instead, the *Ewing* court stated as follows:

> [T]here is an antecedent problem. Plaintiffs are engaged in judge-shopping. They do not like Judge Coleman's decision to limit the first suit to the claims against the LLC, and they have sought the view of a second district judge. Judge Kness should not have obliged.

> Local Rule 40.4 in the Northern District of Illinois permits district judges to ask the court's Executive Committee to consolidate related suits before a single judge. Rule 40.4(c) says that a motion to reassign "shall be filed in the lowest-numbered case of the claimed related set". In this set of cases the motion should have been filed before Judge Coleman. But the LLC did not have a reason to request transfer, and the plaintiffs, who were parties to both suits, did not *want* transfer. Their objective is to have two judges consider their claims, then take the more favorable of the two outcomes.

> Preventing such a resolution requires initiative by the judge assigned to the second suit. Even though Rule 40.4 calls for a motion to be filed in the lower-numbered case, the judge in a higher-numbered case can act on his own. Judge Kness knew that the two suits present identical claims by the same plaintiffs. He knew that the first suit was still pending. He therefore knew everything necessary to see that both suits should be handled by one judge.

*Id*. at 593-94.

The *Ewing* court concluded by stating that "[p]laintiffs should not have filed this second suit; the new defendants should have asked for a transfer or a stay; *the second judge should have acted even if the parties were content to duplicate the proceedings*," and "[a]ll litigants and lawyers must avoid multiplying litigation." *Id*. at 594 (emphasis added).

Local Rule 40.4 states:

> Two or more civil cases may be related if one or more of the following conditions are met:

> **(1)** the cases involve the same property;

> **(2)** the cases involve some of the same issues of fact or law;

> **(3)** the cases grow out of the same transaction or occurrence; or

> **(4)** in class action suits, one or more of the classes involved in the cases is or are the same.

3

N.D. Ill. L.R. 40.4.

Here, the instant case and the case pending before Judge Tharp grow out of the same transaction or occurrence—Plaintiff's purported inclusion in the Aurora gang database and the subsequent traffic stop. In the case before Judge Tharp, Count XI of Plaintiff's original complaint, which Judge Tharp dismissed without prejudice with leave to replead, alleged as follows:

107. The Aurora Police Department maintains a Gang Database consisting of the names and identifying information of individuals who are suspected to be members of street gangs.

108. The Defendant Officers falsely labeled Plaintiff as a member of an Aurora street gang and included his identifying information in the APD's Gang Database without justification.

109. Plaintiff was never notified by APD that he was in the Gang Database. APD never confronted him with evidence that he was gang-affiliated before including him in the Gang Database. There is no procedure by which Plaintiff can contest his inclusion in the Gang Database.

110. If APD had not included Plaintiff's name in the Gang Database, Plaintiff would not have been targeted and detained for an hour by the [Aurora Special Operations Group].

111. The false information that Plaintiff is an Aurora street gang member will adversely affect his ability to not be discriminated against.

112. Plaintiff's liberty has been deprived based on false evidence used against him that he could not challenge.

113. By falsely labeling Plaintiff as an Aurora street gang member, including his name in the Gang Database, and then sharing his identifying information the APD violated Plaintiff's Fourteenth Amendment due process right.

114. The APD's dissemination of false information regarding Plaintiff's gang membership without the precaution of reasonable efforts to guarantee the accuracy of the information restricted Plaintiff's liberty without any procedural safeguards designed to prevent such inaccuracies in violation of his constitutional rights.

115. Plaintiff seeks injunctive and declaratory relief against Defendant Kristen Ziman[sic] in her official capacity to prevent the continued violation of his constitutional rights.

(*Williams v. City of Aurora, et al.*, No. 20 C 2549, Compl., Dkt. # 2, ¶¶ 107-115.)[3]  The amended complaint before Judge Tharp likewise states:

> 20.  In an ongoing effort to combat drug and gang violence, the City and APD have continued with the policies from the 1990's by randomly stopping Black and Latino whom they arbitrarily deem to look like drug dealers or gang members by conducting unconstitutional traffic stops.

> 21.  Aurora has a history of being known as a city where gang and drug activity occurs, so the City has a policy of stopping any vehicle that they suspect the occupants may be in a gang or a drug dealer. The City through APD has stereotyped and racially profiled individuals based on the color of skin, your vehicle, the neighborhood one is driving in, or based on your last name when it is run through the database the police use.  For many years, APD has employed policing strategies in certain Aurora neighborhoods that emphasize officers making large numbers of stops, searches, and arrests, often for non-violent misdemeanor offenses, and with minimal supervisory review. These tactics disproportionately impact Blacks.

> 22.  On August 27, 2019, Plaintiff was driving on High Street in Aurora, Illinois. . . .

> 24.  At or around 3:40 p.m., the Ford Explorer started flashing lights behind the vehicle Plaintiff was driving.

> 25.  Plaintiff was pulled over and four undercover Officers exited the Ford Explorer and approached the 2015 Chevy Equinox Plaintiff was driving.

(*Id.*, Am. Compl., Dkt. # 38, ¶¶ 20-22, 24, 25.)

In the instant case, Plaintiff alleges as follows:

> 56.  On August 27, 2019[,] Mr. Williams was traveling through a neighborhood which is targeted by the [Aurora Special Operations Group] when he was stopped.

> 57.  He was repeatedly questioned about where he was coming from and that it appeared he was coming from a gang house.

> 58.  Mr. Williams was denied admittance to the Citizen Police Academy based on his alleged gang membership and the database.

> 59.  The rights of the Black, Latinx and Poor People[] are continually violated by

---

[3]  On April 7, 2022, Judge Tharp stayed the case during the pendency of the underlying state-court traffic case against Plaintiff.  (No. 20 C 2549, Dkt. # 78.)  The case before Judge Tharp remains stayed as of the date of this order.

the Defendants as part of the APD's pattern and practice of discriminatory policing and unconstitutional use and maintenance of the Gang Database, as outlined above. The City of Aurora's policies and practices were the moving force behind the alleged misconduct by the APD and SOG.

(Am. Compl., Dkt. # 30, ¶¶ 56-59.)

Plaintiff's allegations in the instant suit regarding the purported constitutional violations related to the Aurora gang database are more expansive than those included in the complaint presented to Judge Tharp; the relevant point, however, is that Plaintiff is seeking a ruling on his gang-database allegations, purported constitutional violations, and alleged discriminatory practices by the APD before two judges—a strategy that the Seventh Circuit expressly denounced in *Ewing*. Plaintiff cannot seek to litigate a claim or claims based on "the same transaction or occurrence" here, after having it dismissed and failing to replead it before Judge Tharp.

Given the Seventh Circuit's clear directive to district courts to "act" if a plaintiff seeks to duplicate proceedings, the Court refers the instant case to the Executive Committee and requests that it be reassigned to Judge Tharp as related to *Williams v. City of Aurora, et al.*, No. 20 C 2549.

**Date**: July 21, 2022

Ronald A. Guzmán

**Ronald A. Guzmán**
**United States District Judge**

6